Lazarus, J.
This is a motion made by the defendant for an order pursuant to rule 113 of the Rules of Civil Practice to dismiss the complaint. The action is brought to recover the double indemnity benefit claimed to be due under a policy of *250 life insurance issued by the defendant on the life of Franklin Wilkinson, the son of the plaintiffs herein, who was killed in action in Korea on July 14, 1953. The material facts are not in dispute. The issue for determination is whether the armed conflict in Korea is to be considered ‘ ‘ war, whether declared or undeclared ’ ’ within the exclusionary language contained in the policy.
The defendant contends that (1) the provision for additional indemnity terminated when the insured went into the army in 1951; (2) there was no provision for additional indemnity in the policy when the insured died; and (3) in any event, the death of the insured was specifically excluded from coverage by the terms of the additional indemnity provision.
The policy was issued by the defendant in 1944 with face amount of $1,000, designating as beneficiaries the insured’s parents, Samuel N. Wilkinson and Mary A. Wilkinson. Upon receipt of proof of the insured’s death, the defendant paid the face amount of the policy to the plaintiffs as beneficiaries.
The policy provided for payment of an additional indemnity benefit of $1,000 in the event of death by accidental means. It also provided for forthwith termination of this additional indemnity provision: “ (b) if the insured becomes a member of the military, naval or air forces of any country at war, whether declared or undeclared; ”.
The insured went into the army on August 3, 1951 and remained in the army from then until he was killed on July 14, 1953. When the defendant acquired this information, it refunded premiums paid for the additional indemnity coverage for the period subsequent to August 3, 1951 and it notified the plaintiffs that the additional indemnity coverage was not in force when the insured died. The plaintiffs requested the defendant to permit use of the checks in payment of the face amount without prejudice to their claim for payment of additional indemnity. This request was granted by the defendant.
On October 25, 1950 the North Korean forces crossed the 38th Parallel and invaded the Bepublic of Korea. Promptly thereafter, in response to the resolutions of the Security Council of the United Nations, the President of the United States committed our forces to the aid and assistance of the Bepublic of Korea. This country was an active combatant in the Korean hostilities from 1950 up to and beyond the date of the insured’s death in 1953. The insured was in the army in Korea engaged in combat when he was killed in action on July 14, 1953.
As far as I have been able to ascertain, the courts of this State have not had occasion to consider whether the fighting *251 in Korea is to be considered ‘ ‘ war, whether declared or undeclared ’ ’ within the exclusionary provision contained in the life insurance policy . The question, however, has been presented in several other jurisdictions, both State and Federal.
On February 22, 1951 the Committee on Foreign Affairs of the United States House of Representatives released a report which officially stated that the operation in Korea was not a war (House Report No. 127), and it stated (p. 1): “ No declaration of war has been made by the Congress. The President has not proclaimed a state of war, nor have the North Koreans or Chinese Communist authorities.” This being so, the question remaining to be decided is whether although not technically a declared war, the action in Korea constituted an undeclared war. The President of the United States from time to time characterized the fighting in Korea as a “ police action ’ ’.
We must take the view that words are to be taken in their plain, ordinary, popular sense and that they are to be considered as they would be understood by the average man. “ Contracts of insurance * * * are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense.’’ (Johnson v. Travelers Ins. Co., 269 N. Y. 401, 408.)
The likelihood of death by external, violent and accidental means is immeasurably increased by military service in time of war. In order to protect against this increased hazard, the policy here involved provided that the additional indemnity coverage was to terminate forthwith upon the entrance of the insured into the military service of any country at war. Our courts have held it to be entirely proper for an insurer to limit its liability in situations involving war risks. (Neidle v. Prudential Ins. Co., 299 N. Y. 54, 56.)
While it is true that there was no formal declaration of war by Congress, there can be no doubt that the United States was engaged in a war in Korea as an actual fact.
On June 6, 1951, the Attorney-General held that section 120 of article VI of the Military Law providing for payment of an annuity to veterans disabled by blindness ‘ ‘ during any war ’ ’ should be extended to veterans blinded in Korea. (1951 Atty. Gen. 112): “ The magnitude and actuality of the conflict in Korea, its pervading effect upon the national security and interest, together with the demands created thereby upon the nation as a whole are too apparent to need recounting. * * * They require the conclusion that the Korean hostilities constitute a war for the purpose of determining eligibility under *252 Military Law, Section 210, for the assistance intended thereby for war veterans disabled by blindness.”
In Podos v. Equitable Life Assur. Soc. (1 C. C. H. Life Cases 2d 757) which involved a similar state of facts and this identical policy coverage (case decided in the District Court of the United States for the Southern District of California on March 15, 1954), it was stated, “ Recovery has been denied in the state courts and in a federal court for this district where the policy did not use the word ‘ undeclared ’ but merely excluded a death occurring in time of war.”
Thus it appears that the court held that the Korean conflict was an undeclared war.
Reference has been made to two Pennsylvania cases (Beley v. Pennsylvania Mut. Life Ins. Co., 373 Pa. 231, and Harding v. Pennsylvania Mut. Life Ins. Co., 373 Pa. 270), both decided by the Supreme Court of Pennsylvania. In those cases, the court held that since there had been no formal declaration of war, the Korean fight was not to be considered war. The exclusionary language, however, was not nearly as specific or precise as in this case. It merely excluded death resulting from military service in time of war, without the addition of the words ‘ ‘ whether declared or undeclared ’ ’. The majority opinion in the Beley case suggests that there would have been a holding to the contrary if the words “ declared or undeclared ” had been added.
To hold that under the provisions of this policy the Korean war is not war in the face of 128,000 American casualties is so unrealistic and legalistic as to be utterly unjustifiable, and we cannot shut our eyes to what everyone knows, that there has been, and was when the insured was killed, actually and in reality a war in Korea in which the United States has been seriously engaged. It is clear that nothing in the question of insurance involved herein suggests that the word ‘ ‘ war ’ ’ is used in its technical or legal sense. It is clear that the plain, ordinary and generally accepted meaning of the word ‘ ‘ war ’ ’ is war in fact. It is clear that there was war in fact in Korea when the insured was killed and that he was killed in ‘ ‘ time of war ”.
It follows that there can be no recovery under the accidental death provision of the policy.
The motion is granted.