**Rose BROWN, Plaintiff,**

**v.**

**Harry I. BRONSTEIN, Individually and as Chairman of the New York City Civil Service Commission and the New York City Department of Personnel, et al., Defendants.**

**No. 74 Civil 2112.**

United States District Court,
S. D. New York.

Jan. 16, 1975.

---

Eve Cary, Paul G. Chevigny, New York Civil Liberties Union, New York City, for plaintiff.

Adrian P. Burke, Corp. Counsel, New York City, for defendants; Gregory D. Frost, Asst. Corp. Counsel, New York City, of counsel.

**1330**

## OPINION

EDWARD WEINFELD, District Judge.

■ Plaintiff brings this action under 42 U.S.C., section 1983, for a declaratory judgment and an injunction based upon her non-appointment to the position of policewoman with the New York City Police Department. She alleges that the defendants' refusal to appoint her was arbitrary and irrational in violation of the due process clause of the Fourteenth Amendment, discriminatory in violation of the equal protection clause of the Fourteenth Amendment, and an invasion of her right to privacy and freedom of association in violation of the First Amendment. The defendants move to dismiss the action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of jurisdiction over the subject matter. For the purpose of this motion the allegations of the complaint must be deemed true.[1]

In substance, plaintiff alleges that she has been steadily employed for the past ten years by the New York City Health and Hospital Corporation, and she is now a supervising clerk in radiology at a city hospital; that she resides with her parents and her ten year old son; that she has never been arrested, nor is there any incident in her life to indicate that she is a person of bad repute or of unreliable character. She further alleges that in 1969 she passed the Civil Service examination for the policewoman's position; that after her number on the Civil Service list had been reached, she was interviewed during the course of an official investigation as to her character and questioned about a large number of parking summonses she had received; and that she explained that although the car was registered in her name it did not belong to her but to the father of her child, Macio Ennis, to whom she was not married and with whom she had ceased to associate. She further alleges that she explained to the investigating officers that she never drove the car and was unaware that any tickets had been issued, but nevertheless agreed to pay the fines totalling $365 and requested that the Motor Vehicle Bureau take the registration out of her name.

Thereafter, at a hearing before the Candidate Review Board she was questioned "almost exclusively" about her relationship with Macio Ennis, and she again explained that she no longer associated with him; that he did not contribute to the support of their child; and that neither she nor the child had seen him in six months. Subsequently plaintiff was notified that the Candidate Review Board had recommended disapproval of her application.

She then appealed to the Department of Personnel and was granted another hearing at which she alleges "the questioning again dealt entirely with [her] past relationship with Macio Ennis and Mr. Ennis' criminal record was read." She again reiterated she no longer associated with him and stated it was her own character at issue and not that of Mr. Ennis. Following the hearing plaintiff was informed that the Department of Personnel found her "not qualified" for "unsatisfactory character behavior; summons record."

Plaintiff then appealed to the Civil Service Commission. She was represented by counsel at the hearing of that appeal. She further alleges that at the hearing "a member of the Appeal Board acknowledged that the reason plaintiff had been found disqualified was her relationship with Mr. Ennis who had a criminal record." The Civil Service Commission denied plaintiff's appeal without an explanation.

The defendants, in urging dismissal of the complaint for lack of subject matter jurisdiction, acknowledge that plaintiff, asserting her claim under 42 U.S.C., section 1983, need not exhaust state court remedies before applying for federal ju-

---

1. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 172, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967).

risdictional relief.[2] They contend, however, that plaintiff's claim presents no substantial federal constitutional issue and therefore jurisdiction is lacking; collaterally, they argue that the claim advanced is no more than a review of state administrative proceedings, and for such a review the proper forum is the state courts.

■ The "substantiality" requirement that defendants rely upon is part of a broad jurisdictional principle recently reiterated by the Supreme Court [3] "that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit' ".[4] It is not whether the claim is meritorious that is determinative under this standard. Jurisdiction exists unless the claim is "obviously frivolous," [5] "plainly unsubstantial," [6] or "so insubstantial, implausible, foreclosed by prior decisions of this Court or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court, whatever may be the ultimate resolution of the federal issues on the merits." [7]

■ Is the claim of the plaintiff here so plainly insubstantial or obviously frivolous as to require its dismissal for lack of jurisdiction? The plaintiff, as part of her factual allegations upon which she bases her charges, has attached to her complaint as an exhibit the notice sent to her following her appeal to the Department of Personnel, which stated she was found not qualified for appointment because of "unsatisfactory character behavior; summons record." This obviously refers to the large number of parking summonses she had received, as to which she was questioned during the course of the investigation following which she paid the fines. If that was the reason for denial of plaintiff's application, upon its face it did not violate any constitutional right of the plaintiff, and its validity would rest on purely state law. An habitual lawbreaker, or "scofflaw," can hardly complain if the appointing authorities do

2. Wilwording v. Swenson, 404 U.S. 249, 251, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); James v. Board of Ed., 461 F.2d 566, 570 (2d Cir. 1972), cert. denied, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 491, rehearing denied, 410 U.S. 947, 93 S.Ct. 1355, 35 L.Ed.2d 617 (1973); Corby v. Conboy, 457 F.2d 251, 253 (2d Cir. 1972); Sostre v. McGinnis, 442 F.2d 178, 182 (2d Cir. 1971) (en banc), cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972). It has also been held that a § 1983 plaintiff need not exhaust state administrative remedies. E. g., Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); King v. Smith, 392 U.S. 309, 312, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Damico v. California, 389 U.S. 416, 417, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); McNeese v. Board of Ed., 373 U.S. 668, 671–672, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). The Second Circuit has so far limited the import of these latter decisions to cases in which the administrative remedy is inadequate or resort to the administrative remedies would be futile. Eisen v. Eastman, 421 F.2d 560, 567–569 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970); James v. Board of Ed., 461 F.2d at 570–571; Blanton v. State Univ. of N. Y., 489 F.2d 377, 383–384 (2d Cir. 1973). But the continuing vitality of the Second Circuit's rule on exhaustion of administrative remedies is open to question. Plano v. Baker, 504 F.2d 595 (2d Cir., 1974).

3. Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

4. *Id.* at 536, 94 S.Ct. at 1378, quoting Newburyport Water Co. v. Newburyport, 193 U.S. 561, 579, 24 S.Ct. 553, 48 L.Ed. 795 (1904).

5. Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288, 30 S.Ct. 326, 54 L.Ed. 482 (1910).

6. Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105, 53 S.Ct. 549, 77 L.Ed. 1062 (1933).

7. Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666–667, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974). *See also* Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 249, 71 S.Ct. 692, 95 L.Ed. 912 (1951); Bell v. Hood, 327 U.S. 678, 682–683, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Ex parte Poresky, 290 U.S. 30, 31–32, 54 S.Ct. 3, 78 L.Ed. 152 (1933); McGilvra v. Ross, 215 U.S. 70, 80, 30 S.Ct. 27, 54 L.Ed. 95 (1909).

not deem him qualified to be a law enforcement officer. The exercise of such a judgment clearly would bear a reasonable relationship to the objective of securing an efficient and honest police force.[8]

■ While the complaint might have been more explicitly drawn, a fair reading of it indicates that plaintiff charges that the parking summons record was mere pretext, and that the real reason was that which plaintiff ascribes to the defendants. Thus, after alleging that the refusal to approve her application was not made on a rational basis, but was discriminatory and arbitrary in violation of the due process and equal protection guarantees of the Fourteenth Amendment, plaintiff further alleges: "[d]efendants' refusal to approve plaintiff's application for the job of policewoman was based entirely on her relationship with another person and thus violated her rights to privacy and to free association guaranteed by the First Amendment to the United States Constitution." So viewed, the claim that she was denied appointment because she associated with a man who had a prior criminal record, was the father of her child and with whom she no longer associated does raise a substantial constitutional issue of violation of rights of privacy and association under the First Amendment and equal protection under the Fourteenth Amendment—at least

substantial enough to require denial of defendants' motion.[9] However, it should be emphasized that the court's view that the allegations of the complaint state a claim sufficient to satisfy the jurisdictional test of "substantiality" in no respect reflects any view upon the merits of the claim so presented.

■ Next, the defendants alternatively urge that even if the jurisdictional test is satisfied, the court should abstain from deciding the case. The doctrine of abstention is an exception to the general rule that a federal court, once possessed of jurisdiction, should exercise it.[10] The Supreme Court has cautioned that abstention is to be applied in narrowly limited "special circumstances," [11] and only recently emphasized that a federal court should be mindful of the "substantial authority for the proposition that abstention is not favored in an equal protection civil rights case brought . . . under 42 U.S.C. § 1983 and 28 U.S.C. § 1343." [12] Basically, the doctrine of abstention, first enunciated by Mr. Justice Frankfurter in Railroad Commission v. Pullman Co.,[13] is generally brought into play in those instances where a state statute, constitutional provision, or other state law, is fairly open to question and is reasonably susceptible of an interpretation which would avoid the need for federal constitutional adjudication or at least fundamentally alter

8. *See* Nathanson v. Adams, 1 A.D.2d 823, 148 N.Y.S.2d 742 (1st Dep't 1956), rev'g 207 Misc. 572, 138 N.Y.S.2d 598 (Sup.Ct. 1955).

9. *See, e. g.,* DeGregory v. New Hampshire, 383 U.S. 825, 829, 86 S.Ct. 1148, 16 L.Ed.2d 292 (1966) ; Gibson v. Florida Legislative Comm., 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed. 2d 929 (1963) ; Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960) ; Bates v. Little Rock, 361 U.S. 516, 523, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960) ; NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L. Ed.2d 1488 (1958) ; Socialist Workers Party v. Attorney General, 510 F.2d 253 (2d Cir., 1974).

"Government may not tell a man or woman who his or her associates must be. The individual can be as selective as he desires." Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 179, 180, 92 S.Ct. 1965, 1975, 32 L.Ed.2d 627 (1972) (Douglas, J., dissenting). *See also* Plano v. Baker, 504 F.2d 595 (2d Cir., 1974) and cases cited therein.

10. Cohens v. Virginia, 19 U.S. (6 Wh.) 264, 404, 5 L.Ed. 257 (1821).

11. Zwickler v. Koota, 389 U.S. 241, 252, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967) ; Baggett v. Bullitt, 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

12. Mayor of Philadelphia v. Educational Equality League, 415 U.S. 605, 628, 94 S.Ct. 1323, 1337, 39 L.Ed.2d 630 (1974).

13. 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

the constitutional issues presented.[14] In such circumstances deference to the state for its interpretation of the ambiguous statute, constitutional provision or other state law is warranted.[15] With these principles to guide us, we consider the defendants' plea that this court abstain from deciding the constitutional issues presented by plaintiff's complaint.

The instant case does not involve any state statute or constitutional provision, a construction of which by the state courts would eliminate the need for federal constitutional adjudication of the issue here presented by plaintiff's complaint. What is involved is a decision of an administrative agency under New York State's Civil Service Law. The defendants accordingly suggest that if this court were to abstain from considering the constitutional issue on the merits, and instead were plaintiff remitted to the state courts, there to commence an Article 78 proceeding[16] to review the defendants' action under standards applied by the state courts, and were her position upheld, there would be no need for this court to pass upon the constitutional issues here presented.

Collateral to this contention, the defendants urge that the New York courts are constantly reviewing administrative decisions such as that involved in the instant case and have much expertise in Article 78 proceedings. However, such a proceeding would merely review the agency's stated ground of denial of plaintiff's appointment,[17] to wit, her summons record, and would not resolve her claim as here alleged that the defendants' denial of appointment was based not on that ground, but entirely on her association with a man with a criminal record in violation of her First Amendment rights.[18] To relegate plaintiff to the state courts upon a possibility they would decide that the action of the defendants was arbitrary and capricious based upon the summons record would not only result in delay, but if her petition there were denied, it would not resolve the basic constitutional issues here presented under the First Amendment and in effect would impose upon her a requirement that she exhaust state remedies contrary to Supreme Court rulings.[19] The Supreme Court has observed that "abstention operates to require piecemeal adjudication in many courts . . . thereby delaying ultimate adjudication on the merits for an undue length of time."[20] While the retention of matters such as this adds to the heavy burden of federal courts,[21] under the mandate of the Supreme Court this court has no choice but to accept its responsibility.

In the circumstances here presented, abstention would only serve to delay plaintiff without resolving her basic claim under the First Amendment. The motion to dismiss the complaint is denied.

14. *See* Reetz v. Bozanich, 397 U.S. 82, 85–87, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970) ; Zwickler v. Koota, 389 U.S. 241, 248–249, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967) ; Harrison v. N. A. A. C. P., 360 U.S. 167, 176–178, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959).

15. *E. g.*, Harrison v. N. A. A. C. P., 360 U.S. at 178, 79 S.Ct. 1025.

16. CPLR § 7801 et seq.

17. *See* Barry v. O'Connell, 303 N.Y. 46, 100 N.E.2d 127 (1951) ; Golisano v. Town Bd., 31 A.D.2d 85, 296 N.Y.S.2d 623, 626 (4th Dep't 1968) ; Blum v. D'Angelo, 15 A.D.2d 909, 225 N.Y.S.2d 894 (1st Dep't 1962).

18. *Cf.* Zwickler v. Koota, 389 U.S. 241, 250, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

19. Note 2 *supra; see* James v. Board of Ed., 461 F.2d at 571 (2d Cir. 1972).

20. Baggett v. Bullitt, 377 U.S. 360, 378–379, 84 S.Ct. 1316, 1326, 12 L.Ed.2d 377 (1964) ; *see also* Reetz v. Bozanich, 397 U.S. 82, 86, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970).

21. *Cf.* Karr v. Schmidt, 401 U.S. 1201, 1203, 91 S.Ct. 592, 27 L.Ed.2d 797 (1971).