OPINION OF THE COURT .
Leonard B. Austin, J.
By order dated May 22, 2003, this court converted this action into a special proceeding pursuant to CPLR 103 (c), amended the caption and denied respondent’s motion to transfer the proceeding to Albany County.
In its pleading (now the petition, formerly the complaint), petitioner Nassau Health Care Corporation (NHCC) seeks review of the determination by respondent the New York State Ethics Commission (the Commission) that bars and precludes NHCC’s corporate counsel from attending interview^ by the Commission in its investigation of alleged ethical wrongdoing by NHCC employees. NHCC also seeks an injunction to implement a determination in its favor.
Background
NHCC is a public benefit corporation created in 1997 to provide health care services for the benefit of Nassau County residents (Public Authorities Law § 3401 [1]). It operates Nassau University Medical Center in East Meadow, New York. The Commission was established pursuant to the Ethics in Government Act of 1987 and commenced operations in 1989. It has jurisdiction over state employees. (Executive Law § 94.) In May 2002, the Commission became aware of potential ethical violations of Public Officers Law §§73 and 74 by NHCC employees.
The instant dispute arises out of the Commission’s investigation of these potential ethical violations, namely, allegations that NHCC employees improperly accepted gifts and benefits from five vendors with whom NHCC was negotiating for the installation of a new multimillion dollar computer software system that would revolutionize access to medical records, x-ray films, MRI films and CT scans. For the most part, the gifts and benefits at issue included meals at restaurants, plane fare to and from the vendor’s site, hotel accommodations in *869 connection with on-site reviews by NHCC employees of the subject software system and meals purchased for NHCC employees when the vendors visited NHCC. NHCC states that “due to budgetary constraints” certain employees “considered it fiscally appropriate to either request or allow the vendors to underwrite the expenses incurred * * * as part o[fl their on-site review.” (Cohn affidavit at 3.) State employees are prohibited from directly or indirectly soliciting, accepting or receiving any gift having a value of $75 or more. (Public Officers Law § 73 [5].)
The Commission commenced and proceeded with its investigation, but has refrained from seeking to interview any NHCC employees in the absence of NHCC counsel, pending resolution of this proceeding.
When the Commission determines that there is reasonable cause to believe that a violation of the law has occurred, it is empowered to issue a notice of reasonable cause (notice). On April 18, 2003, the Commission issued notices to seven NHCC employees in connection with gifts and benefits in the following amounts: $216.55; $699.60; $883.02; $1,094.03; $1,375.72; $1,993.73; and $4,010.28 (see notices annexed to the Sleight affidavit, exhibit A). After NHCC had learned of the money spent by vendors on its employees, the money was promptly returned.
In its answer herein, the Commission alleges three objections in point of law, to wit: (1) failure to state a cause of action, (2) lack of standing, and (3) venue. As the venue objection has already been determined, the court turns to the other two objections.
Discussion
A. Failure to State a Cause of Action
In considering an objection of failure to state a cause of action in a CPLR article 78 proceeding, all of the allegations in the petition are to be deemed true. (Matter of Zaidins v Hashmall, 288 AD2d 316 [2d Dept 2001]; Matter of De Paoli v Board of Educ., 92 AD2d 894 [2d Dept 1983].) Where, as here, the allegations in the petition demonstrate the existence of a bona fide controversy which should be addressed, dismissal pursuant to CPLR 3211 (a) (7) and 7804 (f) should be denied. (Zaidins v Hashmall, supra.) Here, by challenging the determination by the Commission to exclude its corporate attorneys from employee interviews as arbitrary and capricious, NHCC has plainly demonstrated a justiciable controversy for article 78 relief. (See generally, Kelly v New York State Ethics Commn., 161 Misc 2d 706 [Sup Ct, Albany County 1994].)
*870 B. Standing
To establish standing, NHCC need only show that the Commission’s action will have a harmful effect on it and that the interest asserted is arguably within the zone of interest to be protected by the statute at issue. (See, Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 9 [1975]; see also, Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 773 [1991].) Here, NHCC argues that its policy of having corporate counsel attend all interviews of corporate employees is a protective measure to ensure that there is no improper disclosure of privileged, confidential or irrelevant material, as a result of which it may be exposed to litigation.
Executive Law § 94 was enacted as part of a sweeping ethics reform package known as the Ethics in Government Act, “to restore public trust and confidence in government.” (Matter of Flynn v State Ethics Commn., 87 NY2d 199, 202 [1995].) While the Commission is statutorily authorized to exercise its powers “only with respect to * * * state officers and employees” (Executive Law § 94 [1]) and not state employers, such as NHCC, a state employer’s interest in protecting itself from charges that it disclosed confidential or privileged information is arguably part of the goal of restoring public trust in state government. Consequently, the Commission’s objection on the basis of standing is rejected. (See, Matter of Kelly v New York State Ethics Commn., 229 AD2d 848, 849 [3d Dept 1996] [Public Employment Relations Board Reports lacked standing to challenge Commission’s advisory opinion binding only former state employee inasmuch as it was neither aggrieved nor bound by that opinion]; see also, Matter of Eulo v Walker, 277 AD2d 547 [3d Dept 2000] [a party who is not directly aggrieved lacks standing].) Here, petitioner NHCC is directly affected by the interviews of its employees as contemplated and noticed by the Commission. Thus, it has standing.
C. Review of the Commission’s Determination
In an article 78 proceeding, the standard for judicial review of an administrative determination is whether the determination is arbitrary and capricious. If there is a rational basis for the administrative determination, there can be no judicial interference. (Matter of Pell v Board of Educ., 34 NY2d 222, 231 [1974]; see also, Matter of John v New York State Ethics Commn., 178 AD2d 51 [3d Dept 1992], lv denied 80 NY2d 753 [1992].)
Turning to the merits, NHCC makes three arguments. First, relying upon Niesig v Team I (76 NY2d 363 [1990]), NHCC *871 claims that the Commission is barred from interviewing NHCC’s high-level employees in the absence of corporate counsel because such employees can bind the corporation, and, therefore, they should be deemed “parties” for the purposes of Code of Professional Responsibility DR 7-104 (a) (1) (22 NYCRR 1200.35 [a] [1]) (communications prohibited between an attorney and an adverse party represented by counsel). Niesig is, however, distinguishable. There, the corporate entity was a party to the proceeding. Here, NHCC is not, and indeed cannot, as a matter of law, be a party to or a target of the Commission’s investigation because the Commission has no authority over state agencies such as petitioner.
Second, NHCC argues that because corporate counsel was not excluded from the interviews of employees of vendors such as Cerna Corporation and Eclipsys Corporation, the Commission’s decision to exclude its corporate counsel from the interviews of its employees is arbitrary and capricious. NHCC’s corporate counsel, however, admittedly does not represent the interests of the individual employees. That there is evidence that the vendors’ corporate counsel appeared in a dual capacity representing the interests of both the vendors and the vendors’ employees individually is of no moment.
More importantly, the interests of the vendors and their employees differ markedly from the interests of NHCC and its employees. That is, the Commission’s disciplinary power extends only to state employees. As the vendors and their employees cannot be targets of the Commission’s investigation, the interviews of vendor employees are not comparable to interviews of NHCC employees.
Third, NHCC insists that Matter of Abrams v Kearney (133 Misc 2d 845 [Sup Ct, Richmond County 1986]) is relevant. There, in furtherance of an investigation into the management policies of the public administrators in various counties, the Attorney General attempted unsuccessfully to exclude counsel for certain witnesses to be present during interviews of those witnesses. Here, the employees of NHCC are entitled to representation by counsel of their choice at the subject interviews, and indeed most, if not all, of the employees in question are so represented. The Commission seeks to exclude only NHCC’s corporate counsel from attending the interviews. Consequently, NHCC’s reliance upon Matter of Abrams is misplaced.
Moving on to the Commission’s arguments, the statutory basis for its determination to exclude corporate counsel from the interviews of the employees under investigation is the *872 language found in Executive Law § 94 (12) (a); namely, that the Commission’s investigation of possible ethics violations “shall be confidential.” However, as NHCC points out, it will receive transcripts of the employee’s testimony given at the interview, and it may well be involved in any consequent disciplinary action with respect to the subject employees warranted under Public Officers Law § 74 (4). Under these circumstances, the rationale that corporate counsel must be excluded from the interview process because it is “confidential” cannot be sustained.
More to the point, the Commission argues that the presence of corporate counsel at the interviews will have a “chilling effect” on the candor of the employees under investigation. The Commission has received information that one of the subject employees, who will be called for an interview, has been ostracized at NHCC because of the employee’s cooperation with the Commission, and apparently two witnesses have said that they believed the president/chief executive officer of NHCC would fire them if he learned that they talked to the Commission (Sleight affidavit at 11). This goes to the heart of the matter; the likely affect of diminished candor on the part of the employees being investigated in the presence of corporate counsel.
Research reveals no New York case law directly on point. The Commission relies upon State Commn. on Human Relations v Talbot County Detention Ctr. (370 Md 115, 803 A2d 527 [Ct App 2002]), wherein a state agency investigating employment discrimination at a state detention center sought and obtained, at the appellate level, injunctive relief, among other things, prohibiting the detention center from being present at witness interviews. Review of the underlying petition in the Maryland case establishes that it was the attorneys for the detention center and not the employee supervisors who were barred from the employee interviews. The Maryland Court of Appeals noted that the detention center had no statutory right to be involved at this preliminary stage of the investigative process and concluded that the detention center’s presence would “likely have the effect of intimidating or influencing witnesses and frustrating the truth-seeking and confidential nature of the investigative process.” (370 Md at 142, 803 A2d at 543.) Such is the case here, according to the Commission. NHCC’s attempt to distinguish the Maryland case, on the grounds that the paramount concern there did not appear to be the disclosure of privileged and confidential information, is not *873 persuasive. The purpose of the interviews in the Maryland case was to investigate claims of discrimination barred by the Maryland Code. The purpose of the interviews at issue here is to investigate gifts and benefits provided by computer software companies in alleged violation of Public Officers Law §§73 and 74. NHCC’s insistence that corporate counsel’s presence is imperative to prevent disclosure of confidential information falling within the physician-patient privilege, the attorney-client privilege or the confidentiality of protected trade secrets is simply not borne out by this record where the issues are gifts and benefits improperly received by NHCC employees from vendors. Indeed, the confidential nature of the Commission’s investigation (Executive Law § 94 [12] [a]) should assuage NHCC’s concern. Further, prior to their interviews employees can well be instructed with regard to disclosure of privileged confidential (physician-patient or attorney-client) information to minimize such concern.
Overall, in the absence of any statutory basis or case law on point for the relief NHCC seeks, the court is compelled to conclude that the Commission’s determination to exclude corporate counsel from interviews of employees, due to the alleged “chilling effect” that the presence of corporate counsel would have on the Commission’s investigation, must be upheld as rational.
Accordingly, the petition is denied and this proceeding is dismissed.